USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/31/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARL A. HOLLAWAY,

Plaintiff,

v.

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

Defendant.

No. 14-CV-5165 (RA)

OPINION ADOPTING REPORT & RECOMMENDATION

RONNIE ABRAMS, United States District Judge:

On July 3, 2014, Plaintiff Carl A. Hollaway filed this action under Section 205(g) and Section 1631(c)(3) of the Social Security Act against the Commissioner of the Social Security Administration ("SSA"), seeking review of the final decision of the Administrative Law Judge ("ALJ") denying him disability insurance and supplemental security income benefits. *See* 42 U.S.C. §§ 405(g), 1383(c). Both parties filed motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c),[1] and the matter was referred to Magistrate Judge Henry B. Pitman for a report and recommendation. On January 8, 2016, Judge Pitman issued a detailed and well-reasoned 67-page Report and Recommendation (the "Report") recommending that Plaintiff's motion be denied and the Commissioner's motion be granted. On January 22, 2016, Plaintiff filed objections to the Report ("Objections"), and on February 12, 2016, the Commissioner filed a response.

Although the Court finds one factual error in the Report, it did not alter the Report's conclusions, which this Court adopts in their entirety.

[1] Plaintiff initiated this action *pro se* in the district court, but was represented by counsel both during the proceedings before the ALJ and before this Court when he filed the instant motion for judgment on the pleadings.

## LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may object to a magistrate judge's recommended findings "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2). A district court must review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made," 28 U.S.C. § 636(b)(1), and should reject, as untimely, arguments not raised before the Magistrate Judge, *Abu-Nassar v. Elders Futures, Inc.*, No. 88 CIV. 7906 (PKL), 1994 WL 445638, at *5 (S.D.N.Y. Aug. 17, 1994) ("These arguments were not raised before Magistrate Judge Dolinger, and are not submitted as objections but as new arguments. Accordingly, plaintiffs' arguments and evidence are untimely."); *see also Flores v. Keane*, 211 F. Supp. 2d 426, 444 (S.D.N.Y. 2001). "To the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 632 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Clear error review is especially appropriate where the objections are merely copied verbatim from the objecting party's earlier briefing. *See Padilla v. LaBalley*, No. 07-CV-5957 (DAB), 2012 WL 4473958, at *3 (S.D.N.Y. Sept. 28, 2012) ("Save the two aforementioned objections, all other objections merely rehash arguments fairly presented to the Magistrate and do not trigger *de novo* review."); *Forsberg v. Always Consulting, Inc.*, No. 06-CV-13488 (CS), 2008 WL 5449003, at *4 (S.D.N.Y. Dec. 31, 2008) (reviewing for clear error where "Plaintiff's objections reiterate—verbatim in many instances—the arguments he set forth in his opposition").

## DISCUSSION[2]

Plaintiff's Objections were copied almost entirely from prior briefing, and as they "repeat [ ] verbatim the arguments that Plaintiff made in his original brief[,] arguments that Judge Pitman considered and rejected in his Report[,] . . . they are reviewed only for clear error." *Faucette v. Comm'r of Soc. Sec.*, No. 13-CV-4851 (RJS), 2015 WL 5773565, at *3 (S.D.N.Y. Sept. 30, 2015), *appeal dismissed* (Jan. 13, 2016).[3] After reviewing the Report for clear error, the Court finds none, with the exception of one mischaracterization of a factual issue that does not alter the Report's ultimate conclusions.

In addition to those portions of the Objections copied verbatim, Plaintiff raises three arguments. They are, however, untimely in that they are aimed not at the Report but at portions of the ALJ's decision not raised before the Magistrate Judge. *See Flores*, 211 F. Supp. 2d at 444 (finding an "objection is untimely" because "Petitioner did not raise this claim before the Magistrate"). Yet even if the Court were to address Plaintiff's three new arguments, they would fail as well. Plaintiff contends: (i) the ALJ committed error by relying on the opinion of consulting physician Dr. Hong S. Park; (ii) the ALJ should have contacted Plaintiff's "treating physician" to fill gaps in the record from the second objection; and (iii) the ALJ erred in finding the Plaintiff not credible based on a report of his initial interview by the SSA.[4] Objections at 12–14, 16, 20.

---

[2] The Court assumes the parties' familiarity with the facts, which are repeated here only where relevant to the findings below.

[3] Plaintiff's fourth and fifth objections are copied in full—verbatim—from prior briefing and the first and third objections are copied verbatim save a select few sentences. *Compare* Pl.'s Mem. at 14–17 *with* Objections at 9–13 (first objection); Pl.'s Mem. at 17–20 *with* Objections at 15–17 (third objection); Pl.'s Mem. at 20–21 *with* Objections at 18–19 (fourth objection); Pl.'s Mem. at 22 *with* Objections at 20 (fifth objection).

[4] While Plaintiff purported to make six objections, the Court frames them as three because, of the four objections containing new text, two overlap and thus are addressed together.

**A. Objections to Dr. Hong S. Park**

Plaintiff contends that the ALJ erred in relying on the opinion of Dr. Hong S. Park, a consulting physician who never physically examined the Plaintiff but evaluated his medical records. In particular, Plaintiff makes the following two arguments: (1) as part of his first objection regarding the treating physician rule, he argues that "the ALJ appears to give substantial weight (what amounts to controlling weight) to the non-examining medical consultant, Dr. Hong. S. Park"; and (2) in his sixth objection, he argues that the ALJ erred when he "relied on Dr. Park's opinion to reach his determination without providing 'good reason' for doing so." Objections at 12, 20–21.

These objections, however, overstate the ALJ's reliance on Dr. Park's opinion. In his decision, the ALJ refers to Dr. Park only once, in order to both corroborate the opinion of Dr. Rubenfeld, the SSA's "independent physical examiner," and refute that of Dr. Blank, Plaintiff's "presumed treating physician." AR at 16, 20. In particular, the opinion states that "even though the examination [by Dr. Rubenfeld] did not uncover an objective basis to limit [Plaintiff's] stooping, kneeling, crouching, balancing, or climbing, I agree [with Dr. Rubenfeld]—like the agency's medical consultant [Dr. Park]—to limit him to occasional postural maneuvering too, out of an abundance of caution." *Id.* at 21. The consistent opinions of Dr. Park and Dr. Rubenfeld thus supported the ALJ's decision not to give controlling weight to the contrary opinion of Dr. Blank, and to accord "great weight" to the opinion of Dr. Rubenfeld. AR at 16, 21. Such a conclusion is permitted by the relevant regulations. *See Negron ex rel. M.C.N. v. Comm'r of Soc. Sec.*, No. 11-CV-8685 (KBF), 2013 WL 2896845, at *6 (S.D.N.Y. June 12, 2013) ("The opinions of non-treating sources such as consulting physicians can . . . even override the opinions of treating physicians if they are supported by the record."). As the ALJ did not accord Dr. Park's opinion

controlling weight, he was not obligated to provide good reasons for citing it. The ALJ's sole reference to Dr. Park does not require remand.

**B. Development of the Record**

In his second objection, Plaintiff contends that the ALJ failed to contact Dr. Blank either to obtain a report of her interactions with Plaintiff or to secure her medical records related to his treatment. This objection also fails.

"It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). On September 17, 2012, prior to Plaintiff's hearing, the ALJ's office called Plaintiff's counsel to "request[] the office treatment notes for Dr. Blank," which counsel indicated he would provide "possibly prior to the hearing." AR at 201. On September 24, 2012, during Plaintiff's administrative hearing, Plaintiff's attorney stated "we did get responses from the primary doctor, [Dr. Blank,] and they're coming in," to which the ALJ responded that Plaintiff's counsel could "call my office if you need more time; we'll give it to you," but warned "[i]f you don't call, we'll assume the records aren't coming . . . [a]nd I'll make a decision without them." AR at 31, 35–36. Following the hearing, the ALJ granted Plaintiff's request for an extension of time to supplement the record, but Plaintiff's counsel never contacted the ALJ or submitted additional evidence. AR at 203. Nevertheless, on October 2, 2016, the ALJ's office again called Plaintiff's counsel "to inquire if the medical [records] submitted w[ere] the extent of

the evidence before closing the record." AR at 204. During this call, counsel "confirmed this evidence was it for the record." *Id.*

In *Eusepi v. Colvin*, 595 F. App'x 7 (2d Cir. 2014), the Second Circuit rejected a similar challenge. *Id.* at 9. In that case, the court concluded that the record was fully developed, despite the lack of "a treating physician's report," because the ALJ otherwise possessed a "complete medical history, and the administrative record was 'adequate for [the ALJ] to make a determination as to disability.'" *Id.* (quoting *Perez*, 77 F.3d at 48). It reasoned that

> at the conclusion of the hearing, [plaintiff's] counsel requested and obtained an additional two weeks to secure additional medical records. He subsequently submitted further records to the agency, representing that the matter was ready to be taken under advisement by the ALJ. In these circumstances, we identify no error in the development of the administrative record.

*Id.* Here, the ALJ provided Plaintiff's counsel ample opportunity to supplement the record, providing additional time to submit supplementary records of Plaintiff's treating physician beyond those the ALJ already possessed. When they did not arrive, the ALJ properly accepted counsel's representation that the record was complete. Just as in *Eusepi*, the ALJ did not err in relying on counsel's representation and Plaintiff's objection is rejected.

### C. Credibility Determination

Lastly, in his third objection, Plaintiff criticizes how the ALJ interpreted the disability field office report that summarizes Plaintiff's initial interaction with the SSA. *See* Objections at 16. The report states:

> claimant was able to sit during whole interview without looking to be uncomfortable. not noticeable problems standing or walking. claimant was helpful and courteous.

AR at 167.[5] The ALJ found that the report's account of Plaintiff's comportment during his SSA interview undermined Plaintiff's self-reported claims that he was in significant pain and unable to sit for extended periods. *See* AR at 20. Plaintiff argues that these inferences "defy logic" because "the fact that [Plaintiff] was courteous and did not get up during and [sic] SSA field office interview does not mean [that he] was not in pain." Objections at 16.

Plaintiff is correct that his ability to sit through a meeting with the SSA without displaying signs of pain does not necessarily indicate an absence of pain and certainly is not dispositive of whether he experienced discomfort. But this is not what the ALJ found. The ALJ instead cited the interview as one of several pieces of evidence undermining Plaintiff's reports of pain and issues with prolonged sitting. *See* AR at 20–21. The ALJ also relied on other medical evidence, including Plaintiff's inconsistent statements to the SSA about his exertional abilities, his contradictory description of symptoms to various medical professionals at Beth Israel Medical Center, his reports—including at the hearing—about the effectiveness of his medication, his ability to maintain his weight (which indicated that he partook in daily activity), and his evaluation by Dr. Rubenfeld. Report at 53–56 (citing AR at 20–24). In addition, the ALJ cited non-medical evidence to doubt Plaintiff's credibility, including the timing of Plaintiff's request for disability following his release from prison and his claim to be unable to drive despite having supposedly had "his medication stolen from his back seat in June 2012." AR at 21, 24.

"Where an ALJ decides to discount a claimant's subjective allegations of pain, the reviewing court must defer to that credibility assessment, as long as the ALJ's findings are explained and supported by substantial evidence." *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 565 (S.D.N.Y. 2009). Here, the Court concludes that the ALJ reasonably determined that

[5] The Court reproduces these notes exactly as they were written by the SSA employee.

Plaintiff's ability to sit through his SSA interview reflected a lack of discomfort. In any event, even without evidence from the SSA interview, the ALJ's ultimate determination on credibility is supported by the substantial record evidence discussed above. Any misinterpretation of Plaintiff's conduct at the SSA interview, therefore, would be harmless. *See McIntyre v. Colvin*, 758 F.3d 146, 148 (2d Cir. 2014) ("Although the ALJ erred . . . we apply harmless error analysis and conclude that the error was harmless . . . .").

**D. The Report**

Having rejected Plaintiff's new objections, this Court reviews the remainder of the Report for clear error. With the exception of one factual error regarding the ALJ's decision on "postural maneuvering" that does not alter the Report's conclusions, the Court identifies none. Report at 56 (quoting AR at 21).

Postural maneuvering describes an individual's ability to perform such functions as "reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 416.969a. In his opinion, the ALJ referenced three physicians who opined on Plaintiff's postural abilities: Dr. Rubenfeld, Dr. Park, and Dr. Blank. As part of their evaluations, each physician described Plaintiff's postural limitations by indicating whether Plaintiff could perform certain postural movements frequently, occasionally, rarely, or never. *See* AR at 57, 233, 239. They did not agree. Dr. Rubenfeld and Dr. Park stated that Plaintiff could "occasional[ly]" perform these postural tasks, AR at 57, 233, whereas Dr. Blank stated that Plaintiff could perform certain postural activities "rarely" and others "never," AR at 239. Plaintiff himself reported, moreover, that "all physical activity causes pain" including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing. AR at 180.

After reviewing this evidence, the ALJ found that Plaintiff was limited to "occasional postural maneuvering" (hereinafter the "Postural Conclusion"). AR at 21. This Postural Conclusion comported with the opinions of Dr. Rubenfeld and Dr. Park, who found Plaintiff occasionally limited, but contradicted the opinion of Dr. Blank, who believed Plaintiff significantly more limited, and the subjective reporting of Plaintiff himself. *See* AR 57, 180, 233, 239. Although the Postural Conclusion and the evidentiary basis for this conclusion are clear, the language the ALJ used to announce his decision is less precise. His opinion states:

> Even though the examination did not uncover an objective basis to limit his stooping, kneeling, crouching, balancing, or climbing, I agree—like the agency's medical consultant—to limit him to occasional postural maneuvering too, out of an abundance of caution.

AR at 20.[6]

The Report misstates the ALJ's basis for the Postural Conclusion. Specifically, the Report erroneously understood the ALJ to have relied on both Dr. Blank's opinion and Plaintiff's self-reporting as the basis for the Postural Conclusion. In fact, the opposite is true: the Postural Conclusion was inconsistent with evidence from Dr. Blank and Plaintiff.[7] The Report applied this misunderstanding to refute three of Plaintiff's arguments. Ultimately, however, this reliance is

---

[6] This language is more easily understood with clarifying information in brackets to assist the reader in deciphering its meaning in context. With the Court's annotations, it states:

> Even though the examination [by Dr. Rubenfeld] did not uncover an objective basis to limit [Plaintiff's] stooping, kneeling, crouching, balancing, or climbing, I agree [with Dr. Rubenfeld]—like [Dr. Park, did]—to limit him to occasional postural maneuvering too, out of an abundance of caution.

AR at 20.

[7] The Report's error appears to stem from the lack of clarity in the language used by the ALJ in describing the Postural Conclusion. Because Dr. Rubenfeld found no "objective basis to limit" Plaintiff's postural maneuvering, the Report erroneously concluded that Dr. Rubenfeld recommended that Plaintiff's postural activities need not be limited. The Report's conclusion accordingly mischaracterizes both Dr. Rubenfeld's opinion and the ALJ's decision. The Report goes on to assume—based on this erroneous conclusion—that the ALJ deferred to Dr. Blank and Plaintiff in evaluating Plaintiff's postural maneuvering. But this assumption was also erroneous as Dr. Blank concluded and Plaintiff testified that Plaintiff suffered from more severe restrictions on his postural maneuvering than merely "occasional" limitations. *See* AR at 180, 239.

harmless as Plaintiff's arguments must be rejected for reasons not considered in the Report. Accordingly, for the reasons that follow, the Court rejects Plaintiff's challenges to: (i) the weight afforded to the opinion of his treating physician, (ii) the consideration of his self-reported symptoms, and (iii) the hypotheticals posed by the ALJ to a vocational expert to determine whether someone with Plaintiff's purported disability could work in the national economy.

**1. Treating Physician**

Plaintiff argued before Judge Pitman that the ALJ impermissibly accorded no weight to the opinion of treating physician Dr. Blank. The Report denied that the ALJ assigned no weight to Dr. Blank's opinion, citing in support its erroneous interpretation of the ALJ's Postural Conclusion. *See* Report at 45–46. As described above, this was error. Nonetheless, Plaintiff's argument must be rejected because even though the ALJ did assign no weight to Dr. Blank's opinion, his decision to do so was permissible under the applicable regulations.

The treating physician rule usually requires "an ALJ to give 'controlling weight' to the opinion of a treating physician." *Foxman v. Barnhart*, 157 F. App'x 344, 346 (2d Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)). "The opinion of the treating physician is not afforded controlling weight," however, where "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Indeed, the Second Circuit has indicated that, in certain circumstances, "[a]n ALJ is entitled to . . . *disregard the opinion of a treating physician altogether*—but only if the ALJ's decision is based upon proper consideration of the [20 C.F.R. § 404.1527(d)] factors." *Foxman*, 157 F. App'x at 346–47 (emphasis added); *see also Flanigan v. Colvin*, 21 F. Supp. 3d 285, 305 (S.D.N.Y. 2014) ("The ALJ's determination to give no weight to Dr. Kovoor's *ipse dixit* after the fact opinion was not erroneous."); *Hach v. Astrue*,

No. 07-CV-2517 (ENV), 2010 WL 1169926, at *11 (E.D.N.Y. Mar. 23, 2010) ("[I]t is not clear from the opinion that *any* weight was accorded, which, if true, would be improper without examining the [relevant] factors.").[8]

Here, though the ALJ assigned no weight to Dr. Blank's opinion, his decision to do so was permissible because, as the Report determined and this Court agrees, the ALJ "did consider all of the factors required by the regulations." Report at 43–45. The regulations require an ALJ to consider:

> (1) the frequency of examination and the length, nature, and extent of the treatment relationship, (2) the evidence supporting the treating physician's opinion, (3) the consistency of the opinion with the record as a whole, (4) whether the opinion is from a specialist, and (5) any other factors brought to light that tend to contradict the treating physician's opinion.

*Foxman*, 157 F. App'x at 346–47 (citing 20 C.F.R. § 404.1527(d)(2)). The Report details that, with respect to the first two factors, the ALJ reviewed the record for indications of Dr. Blank's relationship with Plaintiff and found that, although there was virtually no evidence of her ever having actually examined him, the ALJ did "not discount[] her opinion on this basis." Report at 43 (citing AR at 21). The Report next notes that, for the third factor, the ALJ found "insufficient medical support for Dr. Blank's opinion because she did not support her opinions with objective findings other than the MRI," which, the ALJ concluded, was inconsistent with her findings. Report at 43–44 (citing AR at 20–21). As to the fourth factor, the ALJ "determined that Dr. Blank's assessment regarding the extent of [P]laintiff's impairments was inconsistent with the

[8] Although the Second Circuit has never explicitly confronted whether an ALJ may permissibly accord no weight—as opposed to very little weight—to a treating physician, the Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits permit ALJs to do so in appropriate circumstances. *See Payton v. Astrue*, 480 F. App'x 465, 469 (10th Cir. 2012); *Simone v. Commissioner of Soc. Sec. Admin.*, 465 Fed. App'x 905, 910 (11th Cir.2012); *Rollins v. Astrue*, 464 Fed. App'x 353, 354 (5th Cir. 2012); *Johnson v. Commissioner of Soc. Sec.*, 398 Fed. App'x 727, 735–36 (3d Cir. 2010); *Williams v. Astrue*, 363 Fed. App'x 498, 499–500 (9th Cir. 2010); *Nicholson v. Astrue*, 341 Fed. App'x 248, 252–53 (7th Cir. 2009); *Overton v. Apfel*, 242 F.3d 376 (Table), 2000 WL 1742082, at *1 (8th Cir. 2000); *Price v. Commissioner of Soc. Sec.*, 113 F.3d 1235 (Table), 1997 WL 210805, at *1 (6th Cir. 1997).

balance of the medical record," including the examination of Dr. Rubenfeld and medical records from Beth Israel Medical Center. Report at 44–45 (citing AR at 20–21). Finally, with respect to the fifth factor, the ALJ noted that Dr. Blank was a "non specialist." Report at 45 (citing AR at 21). Having reviewed these factors, the ALJ was entitled to discount the treating physician's opinion in its entirety. *See Foxman*, 157 F. App'x at 346–47. The Report thus properly rejected Plaintiff's argument that the ALJ's decision to afford Dr. Blank's opinion no weight was error requiring remand.

**2. Plaintiff's Self-Reporting**

Plaintiff also argued before Judge Pitman that the ALJ completely discounted his subjective reports of his own pain and limitations. Again, the Report erroneously counters this argument by misinterpreting the ALJ's Postural Conclusion. *See* Report at 56. This error was also harmless, however, as the ALJ *did* rely on Plaintiff's subjective reports of his symptoms contrary to Plaintiff's argument.

The ALJ, at least in part, credited Plaintiff's subjective symptoms in determining his "residual functional capacity," which is defined as "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545. The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to require his assignment to a limited range of light work," AR at 20, as opposed to a "full or wide range of light work," 20 C.F.R. § 416.967(b). A "full or wide range of light work" includes "the ability to do substantially all of [the following] activities": lift ten pounds "frequently," lift twenty pounds occasionally, and do "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

The ALJ must have relied on Plaintiff's subjective reporting in determining his residual functioning capacity as such a determination was inconsistent with all three physicians referenced in the ALJ's decision. Had the ALJ adopted Dr. Rubenfeld or Dr. Park's opinions in full, he would have found Plaintiff capable of performing a "full or wide range of light work" because the regulatory requirements for such a finding perfectly track the findings of these physicians. *See* AR at 56–57;232–33.[9] Had the ALJ adopted Dr. Blank's opinion, he could not have found Plaintiff capable of performing any light work as Dr. Blank indicated Plaintiff needed to be lying down for approximately three hours in an eight hour workday. *See* AR at 239 (Dr. Blank's evaluation noting that Plaintiff can sit only zero to two hours and stand or walk no more than three hours in an eight hour workday).[10] Plaintiff testified, however, that he could sit and stand in sixty-minute increments, and did not raise any need to lie down when asked about his ability to sit for long periods. *See* AR at 46–47.[11] The ALJ's decision to limit Plaintiff's capacity to *limited* light work, therefore, must have reflected Plaintiff's own testimony about his sitting and standing limitations.

Even if, moreover, the ALJ completely discounted Plaintiff's subjective reports of pain, he would not have erred so long as substantial evidence supported his decision. *See Garcia v. Astrue*, No. 07-CV-6658 (DAB), 2009 WL 212405, at *7 (S.D.N.Y. Jan. 29, 2009) ("The ALJ had significant discretion to discount the credibility of Plaintiff's complaints in light of medical findings and other objective evidence."). As described above, the ALJ's decision recounted more than substantial evidence to support the determination that Plaintiff lacked credibility. Report at

---

[9] Dr. Rubenfeld found that Plaintiff had no limitations to standing, walking, sitting, pushing, or pulling and an ability to lift and carry ten pounds frequently and twenty pounds occasionally. *See* AR at 232–233. Similarly, Dr. Park found that Plaintiff could sit, stand, or walk for six out of eight hours each day, lift ten pounds frequently, and lift twenty pounds occasionally. *See* AR at 56–57.

[10] Indeed, the ALJ explicitly disregarded Dr. Blank's findings on Plaintiff's ability to sit, stand, and walk as not supported by the record evidence. *See* AR at 21.

[11] Although Plaintiff replied "no" when asked if he could do "a simple desk job" for "eight hours a day for five days a week," he explained that "the oxycodone wouldn't allow me to do that" because "I can't concentrate on a desk job or anything like that." AR at 46. He did not indicate a physical inability to perform such work.

53–56 (summarizing the evidence underlying the ALJ's credibility conclusion) (citing AR at 20–24). The Report thus did not err in refusing to remand on this basis.

### 3. The Hypotheticals

Finally, Plaintiff argued before Judge Pitman that the ALJ's hypothetical questions to a vocational expert required remand because they ignored both Plaintiff's testimony and Dr. Blank's opinion. The Report erroneously rejected this argument by virtue of its misinterpretation of the ALJ's Postural Conclusion. *See* Report at 59–60. The Report nonetheless was correct in rejecting the argument because the ALJ's questions: (i) did rely on Plaintiff's self-reporting; (ii) did not need to rely on Dr. Blank's opinion; and (iii) in any event, were supported by substantial evidence, which is all that the relevant regulations require. First, the ALJ's questions reflected Plaintiff's self-reporting. As already discussed, the ALJ's determination of Plaintiff's residual functioning capacity for only a "limited range of light work" reflected Plaintiff's testimony—at least in part. AR at 20. This finding formed the basis for asking the vocational expert about not only light work but also sedentary work that would "allow an individual to switch back and forth between a siting and standing position, if necessary, every hour." AR 25 & n.4, 48–49. Second, with respect to Dr. Blank's opinion, the ALJ permissibly assigned it no weight as discussed above and thus, it could not have been error to ignore her opinion in forming the hypotheticals. Finally, irrespective of whether the hypotheticals reflected Plaintiff's self-reporting or Dr. Blank's opinion, "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence and accurately reflect the limitations and capabilities of the claimant involved." *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Here, as the hypotheticals were supported by the opinions of Dr. Rubenfeld, Dr. Park, the medical

records from Beth Israel Medical Center, and, to an extent, Plaintiff's own testimony, the Report did not err in concluding that remand is unnecessary.

**CONCLUSION**

As the Court rejects Plaintiff's new objections after a *de novo* review and finds that any clear error in the Report is ultimately harmless, the Report's conclusions are adopted in full. The Commissioner's motion is thus granted and Plaintiff's motion is denied. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: March 31, 2016
New York, New York

Ronnie Abrams
United States District Judge